UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KEVIN WILDER

VERSUS

SCOTT MORGAN ET AL

CASE NO.  6:20-CV-01383

JUDGE ROBERT R. SUMMERHAYS

MAGISTRATE JUDGE CAROL B. WHITEHURST

## MEMORANDUM RULING

The present matters before the Court are two motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure: (1) a Motion to Dismiss filed by the Lafayette Police Department (the "LPD Motion to Dismiss") [ECF No. 17], and (2) a Motion to Dismiss filed by defendants Scott Morgan and the Lafayette City-Parish Consolidated Government (the "LCG/Morgan Motion to Dismiss") [ECF No. 18]. As explained below, the Court **GRANTS** the LPD Motion to Dismiss. The Court **GRANTS IN PART** and **DENIES IN PART** the LCG/Morgan Motion to Dismiss.

## I.
### BACKGROUND

Members of the Lafayette Police Department ("LPD") responded to a report of a single-vehicle accident on October 24, 2019. Plaintiff Kevin Wilder alleges that when LPD Officer "D. Smith" arrived on the scene, Wilder "was calmly sitting on the curb," and Officer Smith "read Mr. Wilder his Miranda Rights and instructed him to walk to the front of a [LPD vehicle] some yards away."[1] Wilder alleges that he was unsure where to walk based on Officer Smith's instructions.[2] When Wilder did not stop walking when he reached the front of the LPD vehicle as instructed,

---

[1] First Amended Complaint [ECF No. 10] at ¶¶ 4-5.
[2] *Id.* at ¶ 6.

Officer Smith "then forcefully grabbed Mr. Wilder by the arm and repositioned him with his back to the police unit and his body facing" defendants Baudoin, Shanahan, and four "John Doe" defendants; these defendants allegedly witnessed Smith grabbing Wilder.[3] Wilder alleges that, at this time, his right arm "was resting on the police unit, and his left hand was by his side with his cell phone visible."[4] Wilder alleges that none of the officers observed or believed that Wilder possessed a gun or other dangerous weapon during this interaction.[5] Officer Smith than requested that Wilder hand him the phone in Wilder's hand.[6] When Wilder did not comply, Smith "attempted to grab Mr. Wilder's phone out of his left hand."[7] Wilder alleges that Smith than "quickly and vigorously" grabbed him and tried to restrain him with handcuffs.[8] According to Wilder, Smith clenched his right arm while defendant Mouton took hold of his left arm. Wilder alleges that Mouton than "pushed [him] forward [and] then seemingly leaped onto [Wilder's] back while Officer Smith dragged him down by the arm."[9] Wilder alleges that Mouton and Smith caused him to slam "head-first into the concrete pavement, splitting the left side of his head and causing him to lay in a puddle of his own blood."[10] Wilder further alleges that Mouton then "knelt on Mr. Wilder's neck, obstructing his ability to breath."[11] Wilder contends that he did not resist arrest or otherwise take any action that would justify the use of force under the circumstances.

Wilder alleges that defendant Smith attempted to cover-up his use of force based on body-camera footage after Wilder was placed under arrest.[12] Specifically, Wilder alleges that Smith

---

[3] *Id.*
[4] *Id.* at ¶ 7.
[5] *Id.*
[6] *Id.*
[7] *Id.* at ¶ 8.
[8] *Id.*
[9] *Id.* at ¶ 9.
[10] *Id.* at ¶ 10.
[11] *Id.* at ¶ 11.
[12] *Id.* at ¶ 13.

falsely told his supervisor, defendant Shanahan, and another LPD officer that Wilder failed to follow his instructions and walked away from him.[13] Wilder further alleges that Mouton "conveyed a different tale to his fellow officers, telling them that Mr. Wilder 'kept pulling away' when they tried to confiscate his phone and that when they were going to handcuff him, he 'pulled away some more.'"[14] Wilder alleges that body-cam footage does not support Smith's or Mouton's version of the interaction between Wilder and the officers.

Wilder filed the present action under 42 U.S.C. § 1983 against LPD Chief of Police Scott Morgan, the Lafayette Consolidated Government ("LCG"), LPD, four "John Doe" members of the LPD, and two unnamed insurance companies.[15] Wilder asserts claims under the Fourth and Fourteenth Amendments to the United States Constitution.[16] Wilder also asserted state law claims for, *inter alia*, assault, battery, intentional misrepresentation, negligent and intentional infliction of emotional distress, abuse of process, and malfeasance in office; he requests compensatory, special, and punitive damages.[17] The defendants filed an initial round of motions to dismiss the Original Complaint.[18] The Court denied these motions and ordered Wilder to file an amended complaint.[19] Wilder then filed the present First Amended Complaint, adding defendants "D. Smith," "T. Mouton," "K. Baudoin," and "R. Shanahan." The First Amended Complaint continues to name the four "John Doe" defendants but corrects the name of LCG to the Lafayette City-Parish Government. Defendants then filed the present motions to dismiss.

---

[13] *Id.* at ¶ 13.
[14] *Id.* at ¶ 16.
[15] Original Complaint [ECF No. 1] at ¶¶1-2.
[16] *Id.* at ¶¶8-10.
[17] *Id.* at ¶51.
[18] ECF No. 4-6.
[19] ECF No. 9.

# II.
## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a complaint fails to state a legally cognizable clam.[20] In other words, a Rule 12(b)(6) motion "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."[21] When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[22] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[23] Moreover, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'"[24] The requirement that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.[25] In considering a Rule 12(b)(6) motion, a court must limit itself to the contents of the complaint, including documents attached to or incorporated by the complaint, and matters of which judicial notice may be taken, including matters of public record.[26]

---

[20] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[21] *Id.* at 161-62.
[22] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).
[23] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations, quotation marks, and brackets omitted).
[24] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).
[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 555).
[26] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

# III.
# LPD MOTION TO DISMISS

Defendant contends that Plaintiff's claims against LPD must be dismissed because LPD is not a separate and distinct juridical entity from the City of Lafayette, and thus lacks capacity to be sued.[27] Rule 17(b) of the Federal Rules of Civil Procedure provides that "[c]apacity to sue or be sued shall be determined ... by the law of the state in which the court is located ..."[28] Under Louisiana law, an entity must qualify as a juridical person to possess the capacity to be sued.[29] A person may be either natural or juridical. "A natural person is a human being" and a "juridical person is an entity to which the law attributes personality, such as a corporation or partnership."[30] In *Roberts v. Sewerage & Water Board of New Orleans*,[31] the Louisiana Supreme Court explained that "a local government unit may be deemed to be a juridical person separate and distinct from other government entities[] when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity." Thus, where there is no constitutional or statutory authority for the entity to sue or be sued, that entity is without capacity under the *Roberts* analysis.[32] Accordingly, courts have consistently held that city police departments are merely "branches or parts of the greater corporate body politic or judicial entity" and thus lack the capacity to be sued.[33] The City of Lafayette is governed by a Home Rule Charter and, under that charter, the police department is a division of the City's administrative branch. But that charter does not grant the police department the status of a corporate body or place it under a

---

[27] ECF No. 5 at 1; ECF No. 14 at 1.
[28] Fed. R. Civ. P. 17(b).
[29] La. C. C. Art. 24.
[30] La. Civ. Code Art. 24.
[31] 634 So. 2d 341, 347 (La. 1994).
[32] *City Council of Lafayette v. Bowen*, 649 So.2d 611, 613–616 (La.App. 3rd Cir.1994), writ denied, 650 So.2d 244 (La.1995).
[33] *Clark v. Lafayette Police Dept.*, No. 18-CV-58, 2018 (Citing *Brown v. City of Alexandria*, No. 17-CV-798 (W.D. La. 2018)).

separate board with powers of self-government; nor does it otherwise grant LPD the legal capacity to function independently.[34] As a result, courts have consistently held that LPD does not have the legal capacity to be sued.[35] In sum, applying the *Roberts* analysis to the present case, the Court agrees that LPD is not a separate juridical person under Louisiana law. Accordingly, the LPD Motion to Dismiss is GRANTED and the claims asserted against LPD are dismissed with prejudice.

## IV.
## LCG/Morgan Motion to Dismiss

### A. Claims Asserted Against Chief Morgan.

Defendant Morgan argues that the federal claims against him should be dismissed because they are duplicative of claims asserted against LCG. "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution."[36] Section 1983 "is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere."[37] To state a claim under Section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged violation was committed by a person acting under color of state

---

[34] *Edmond v. Lafayette Consol. Gov't*, 2016 WL 3693653 (W.D. La. May 24, 2016).
[35] *Id.* (citing *Broussard v. Lafayette Consol. Gov't*, 45 F. Supp. 3d 553, 571 & n. 4 (W.D. La. 2014)); *Lavergne v. Lafayette City Police Dep't*, No. 6:13-2146, 2014 U.S. Dist. LEXIS 30885, 2014 WL 931517, at *4 (W.D. La. Mar. 10, 2014), aff'd sub nom. *Lavergne v. Bajat*, 591 Fed.Appx. 270 (5th Cir. 2015), cert. dismissed, 135 S. Ct. 2810, 192 L.Ed. 2d 845 (2015), reconsideration denied, 136 S. Ct. 291, 193 L.Ed. 2d 19 (2015); *Brown v. Lafayette City-Par. Consol. Gov't*, No. 6:13-2436, 2013 U.S. Dist. LEXIS 185582, 2014 WL 1217960, at *1 (W.D. La. Feb. 28, 2014); *Marceaux v. Lafayette Consol. Gov't*, 921 F. Supp. 2d 605, 624 (W.D. La. 2013); *Cormier v. Lafayette City Parish Consol. Government*, No. 6:09-cv-0703, 2011 U.S. Dist. LEXIS 125283, 2011 WL 5156862, at *3 (W.D. La. Oct. 28, 2011), rev'd on other grounds, 493 Fed.Appx. 578 (5th Cir. 2012); *Domingue v. Lafayette City Parish Consolidated Government*, No. 05-2151, 2008 U.S. Dist. LEXIS 21277, 2008 WL 728654, at *5 n. 13 (W.D. La. Mar. 17, 2008); *Batiste v. Bonin*, No. 06-1352, 2007 U.S. Dist. LEXIS 44355, 2007 WL 1791219, at *4 (W.D. La. June 13, 2007).
[36] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (citing 42 U.S.C. § 1983).
[37] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

law.[38] "A judgment in a § 1983 lawsuit against an official in his official capacity imposes liability

against the entity he represents."[39] Therefore, it is "well settled that a suit against a municipal

official in his or her official capacity is simply another way of alleging municipal liability."[40]

Here, the First Amended Complaint expressly asserts Section 1983 Claims against Morgan

in his *official* capacity as the Lafayette Chief of Police.[41] The claims and remedies sought against

Morgan and LCG in this case are the same. Since Morgan is an official of LCG and LCG is a

defendant in this action, the claims asserted against Morgan are duplicative of the claims asserted

against LCG. The Court therefore GRANTS the LCG/Morgan Motion to Dismiss with respect to

the claims asserted against Morgan. These claims are dismissed with prejudice.

## B. *Monell* Claims Asserted Against LCG.

LCG next challenges Wilder's *Monell* claims. LCG may not be held liable under Section

1983 on a theory of vicarious liability.[42] It may, however, be liable under *Monell v. Dep't of Soc.*

*Servs.*, when allegedly unconstitutional conduct "implements or executes a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[43]

In other words, the unconstitutional conduct at issue must be directly attributable to the

municipality through some sort of official action. To state a Section 1983 *Monell* claim, a plaintiff

must allege facts demonstrating that (1) an official policy, (2) promulgated by the municipal

policymaker, (3) was the moving force for the violation of a constitutional right.[44] Official policies

---

[38] *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008).

[39]

[40] *Howell v. Town of Ball*, No. 12–951, 2012 WL 3962387, at *4 (W.D. La. Sept. 4, 2012) (citing *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *Hafer v. Melo*, 502 U.S. 21 (1991); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005).

[41] First Amended Complaint [ECF No. 10] at ¶ 1a ("[Morgan] was at all times Chief of Police at the Lafayette Police Department...[h]e is sued in his official capacity").

[42] *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), *cert. denied sub nom. Hicks-Fields v. Harris Cty., Tex.*, ___ U.S. ___, 138 S. Ct. 510 (2017).

[43] 436 U.S. 658, 690 (1978).

[44] *Blanchard-Daigle v. Geers*, No. 18-51022, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020).

may exist in the form of "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy."[45] To plead a *Monell* claim on the basis of a wide-spread practice, the plaintiff must plead facts showing "sufficiently numerous prior incidents," as opposed to "isolated instances."[46] A plaintiff "must do more than describe the incident that gave rise to his injury."[47] The facts pled must also show incidents similar to the conduct at issue in the instant case—that is, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."[48]

Wilder bases his *Monell* claim against LCG on "a clear pattern of excessive and improper use of force against citizens like Mr. Wilder."[49] Wilder alleges that "between 2010 and 2019, there were 107 civil lawsuits filed against LPD."[50] Wilder then briefly identifies fourteen of these lawsuits as involving allegations of excessive force from 2007 through 2020—approximately one case per year.[51] Wilder further alleges that from 2010 through 2019, LPD officers submitted "1,172 use of force reports...equating to one approximately every 3 days."[52] Wilder's remaining allegations of a pattern of excessive force are conclusory and do not satisfy the *Twombley/Iqbal* requirement that the plaintiff plead facts, not conclusions to support a plausible claim.[53]

---

[45] *Id.*
[46] *McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir.1989).
[47] *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020).
[48] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).
[49] ECF No. 10 at ¶ 36.
[50] *Id.*
[51] *Id.* at ¶¶ 30-31. In ¶ 32 of the First Amended Complaint, Wilder alleges that, in 2012, "LPD was sued for their lack of supervision and proper discretion in hiring and training officers, for their misconduct, in handling of evidence." Id. at ¶ 32. Wilder, however, pleads no facts showing that the allegations of this 2012 lawsuit are similar to the excessive force allegations at issue in the present case. In other words, this allegation does not satisfy the "similarity" requirement for pleading a "wide-spread practice" claim under *Monell*.
[52] *Id.* at ¶ 28.
[53] For example, Wilder alleges that "the LPD, as part of LCG, has a history of not properly disciplining or firing officers when they engage in illegal or improper conduct, including excessive use of force and improper deadly use of force." *Id.* at ¶35. Wilder alleges no other facts to support this conclusory statement other than his previous

8

A plaintiff may point to prior occurrences of constitutional violations to plead a *Monell* claim against a municipality. Those prior occurrences, however, must be not only similar to conduct at issue in the plaintiff's case but also persistent as opposed to sporadic or isolated. This persistency requirement ensures that the alleged pattern of unconstitutional actions by municipal officers is based on conduct that has "occurred for so long and with such frequency that the course of conduct demonstrates the [municipality's] knowledge and acceptance of the disputed conduct."[54] The Fifth Circuit also requires the plaintiff to plead more than a list of past actions alleged to be unconstitutional; a plaintiff must place these past occurrences in context to support the inference that the municipality knew about and accepted a wide-spread course of unconstitutional conduct. For example, in *Peterson v. City of Fort Worth, Tex.*,[55] the plaintiff identified 27 excessive force complaints of against the Fort Worth Police Department over approximately four years. The court held that these prior occurrences did not support a *Monell* claim because the plaintiff "failed to provide context" to those 27 excessive force complaints sufficient to show that the complaints reflected municipal policy: "Twenty-seven incidents in four years, with no context as to the overall number of arrests or any comparisons to other cities, is not sufficient evidence of a pattern rising to the level of a policy."[56]

Here, Wilder's allegations do not show a wide-spread practice or pattern that rises to the level of municipal policy. Wilder's allegation of 107 lawsuits filed against LPD from 2010 through

---

allegations with respect to use of force claims asserted against LPD from 2010 through 2019. Wilder need not plead the relevant policy or widespread practice in exhaustive detail. *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842–46 (S.D. Tex. 2011). Nor is Wilder subject to a heightened pleading standard. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) (holding that *Monell* claims are not subject to a heightened pleading standard). However, the bare requirements of notice pleading under Rule 8 of the Federal Rules of Civil Procedure require that "[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... *cannot be conclusory; it must contain specific facts*." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.1997) (citation omitted) (emphasis added).

[54] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

[55] 588 F.3d at 851–52.

[56] *Id.* at 851 n.4.

2019 does not show such a wide-spread practice because the First Amended Complaint does not show that these lawsuits involve conduct similar to the conduct at issue in the present case. With respect to the fourteen excessive force cases cited in Wilder's complaint, these cases were filed over a thirteen-year period—more than three times longer than four-year period and 27 complaints that the *Peterson* court found insufficient to establish a municipal policy. Moreover, as with *Peterson*, Wilder does not place these fourteen complaints in context to show that they reflect a pattern that rises to the level of LCG policy.

Nor does Wilder's allegation that 1,172 use-of-force reports were filed by LPD officers from 2010 through 2019 show such a pattern without additional context. A use-of-force report standing alone does equate to a constitutional violation absent facts showing the context for that use of force. Wilder pleads no facts showing that this number of use-of-force reports is so unusual or extreme that it supports an inference of a persistent pattern of excessive force violations. For example, Wilder does not place this statistic into the context by showing the total number of arrests, nor does he offer comparisons to other, similarly situated municipalities.

In contrast, in *Flanagan v. City of Dallas*,[57] the court held that the plaintiff sufficiently pled a *Monell* claim based on a pattern of excessive force applied by members of the Dallas Police Department. There, the plaintiff pled a combination of statistics, past incidents, and statements by city officials.[58] The plaintiff's allegations included statistics comparing the City of Dallas to similarly situated municipalities as far as police misconduct, the number of grand juries convened and internal affair investigations conducted regarding police misconduct, and the number of shootings of unarmed individuals by Dallas police officers during the same year that the plaintiff

---

[57] 48 F.Supp. 3d 941, 953 (N.D. Tex. 2014).
[58] *Id.*

10

was subjected to unreasonable force.[59] Unlike *Flanagan*, Wilder's allegations do not provide the context required to support a plausible *Monell* claim.

Wilder also appears to allege a *Monell* claim based on allegations that Morgan, LPD, and LCG failed to supervise and train LPD officers. Specifically, Wilder alleges that "Defendants Morgan, Shanahan, LPD as part of LCG did not properly train, supervise, and/or discipline Defendant Officers Smith, Mouton, and Baudouin with regard to proper police practices."[60] "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[61] To state a claim of municipal liability for a failure to train municipal employees, the plaintiff must plead facts showing that: "(1) the municipality's training policy procedures were inadequate, (2) the municipality was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the constitutional violation."[62]

The failure to train must thus reflect a "deliberate" or "conscious" choice by the municipality—on other words, rise to the level of municipal policy—for that municipality to be held liable for such a failure.[63] "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[64] "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[65] There are two ways a plaintiff can establish a municipality's deliberate indifference to the need for proper training. First, the plaintiff may demonstrate that a municipality had "[n]otice

---

[59] *Id.* at 953.
[60] ECF No.
[61] *Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1350, 1359, 179 L.Ed. 2d 417 (2011).
[62] *Kitchen v. Dallas Cty.*, 759 F.3d 468, 484 (5th Cir. 2014).
[63] *Id.* at 389.
[64] *Board of County Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed. 2d 626 (1997).
[65] *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998).

of a pattern of similar violations," which were "fairly similar to what ultimately transpired" when the plaintiff's own constitutional rights were violated.[66] The second approach to pleading a failure-to-train claim is the limited exception for "single-incident liability," which represents the rare case where a constitutional violation results from "the highly predictable consequence" of a particular failure to train.[67]

With respect to the first approach, Wilder has not pled facts showing a pattern of similar violations that should have placed LCG or LPD on notice. Wilder's reliance on the 130 lawsuits filed against LCG and LPD does not demonstrate this pattern because—as explained in connection with Wilder's claim based on a "wide-spread practice"—Wilder's allegations do not show that these lawsuits were grounded on conduct similar to the conduct at issue in the present case. Moreover, the fourteen use-of-force complaints cited by Wilder do not support his failure-to-train claim for the same reason that they do not support a claim based on a pervasive pattern of misconduct that rises to the level of municipal policy. Specifically, Wilder does not plead facts showing that these fourteen complaints over a thirteen-year period reflect a persistent pattern of misconduct versus isolated incidents.

Nor do Wilder's allegations state a plausible claim based on the "single-incident liability" exception. Specifically, Wilder does not plead facts describing how Morgan or the other defendants with a supervisory role failed to adequately train or supervise the other defendants. Instead, Wilder alleges the facts of his excessive force claim and then merely adds the conclusionary and formulaic assertion that this conduct resulted from LCG's failure to adequately train and supervise the defendant officers who allegedly applied excessive force in his arrest.[68]

---

[66] *Kitchen,* 759 F.3d at 484.
[67] *Id.*
[68] ECF No. 10 at ¶ 24.

12

Wilder must plead more than "generic, boilerplate recitations of the elements of claims against a municipality for an unconstitutional custom or practice, failure to adequately train or supervise, and negligent hiring of officials" to adequately allege a *Monell* claim based on a failure to train or supervise.[69]

In sum, Wilder's First Amended Complaint does not adequately plead a *Monell* claim against LCG. The Court, however, must next consider whether Wilder should be given an opportunity to amend the complaint and re-plead his *Monell* claim. Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires." "Courts should ordinarily grant a plaintiff at least one opportunity to amend before dismissing a complaint with prejudice for failure to state a claim."[70]   One key exception to this generous standard is where the amendment would be futile.[71]   In determining futility, courts "apply the same standard of legal sufficiency as applies to Rule 12(b)(6)."[72]

Here, Wilder has been previously granted leave to file an amended complaint. This would ordinarily weigh against granting Wilder an opportunity to re-plead. However, three factors weigh in favor of allowing Wilder to re-plead his *Monell* claim against LCG. First, the prior opportunity to amend did not follow a substantive ruling on the first round of motions to dismiss. Such a merits ruling may have provided Wilder with guidance on any pleading deficiencies with respect to his *Monell* claim. Second, granting leave to amend will not unduly delay the proceeding because defendants have recently filed a new motion to dismiss, and a ruling on that motion may affect the

---

[69] *Thomas*, 800 F. Supp. 2d at 845. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, quotation marks, and brackets omitted).

[70] *Reed v. Gautreaux*, No. CV 19-130, 2019 WL 6219780, at *3 (M.D. La. Nov. 21, 2019) (citing *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738 at *12 (E.D. La. Oct. 14, 2014)); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)).

[71] *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

[72] *Id.*

scope of the case.[73] Third, the Court cannot conclude that an amendment of Wilder's *Monell* claim to address the deficiencies outlined in this ruling would be futile. Accordingly, the Court DENIES the LCG/Morgan Motion to Dismiss without prejudice and orders that Wilder file an amended complaint that addresses the deficiencies outlined in this ruling. The amended complaint must be filed with twenty (20) days of the date of the Court's ruling on the newly filed motion to dismiss, ECF No. 28.

## C. Conspiracy Claim under Section 1985(3).

Finally, LCG argues that Wilder has not plead a viable conspiracy claim. To allege a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege, (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States.[74] Section 1985(3) creates no rights, but "is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—the equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section."[75] Where all of the alleged participants in a conspiracy are members of the same collective entity, the conspiracy does not involve two or more people and cannot support a conspiracy claim.[76] LCG argues that because Morgan and the other defendants are all members of the same collective entity—LCG—Wilder's allegations cannot support a conspiracy claim.

---

[73] ECF No. 28.

[74] *Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir. 1994).

[75] *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

[76] *Hilliard*, 30 F.3d at 653; *see also Moody v. Jefferson Parish Sch. Bd.*, 803 F.Supp. 1158, 1166 (E.D.La.1992) (School Board, Principal, Vice-Principal, and various teachers are all employed by the Jefferson Parish School Board and, thus, are a single entity), aff'd, 2 F.3d 604 (5th Cir. 1993); *Hankins v. Dallas Indep. Sch. Dist.*, 698 F.Supp. 1323, 1330 (N.D. Tex. 1988) (high school and its officials constitute a single entity); *Chambliss v. Foote*, 421 F.Supp. 12, 15 (E.D. La. 1976) ("the university and its officials are considered as constituting a single legal

Wilder counters that he has pled a viable conspiracy claim against Morgan, LCG, and the other defendants. However, it is not clear from the First Amended Complaint whether Wilder's allegations state an independent conspiracy claim against any of the defendants. The only reference to a conspiracy in the Third Amended Complaint is a brief reference in paragraph 1(j) of the complaint where Wilder identifies the named defendants and alleges: "at all times relevant to this complaint, all defendants acted under the color of state law, in concert and conspiracy, and were jointly and severally responsible for the harms caused to plaintiff." Wilder asserts his federal and state claims in paragraphs 39-50 of the First Amended Complaint, but does not expressly plead a conspiracy claim against the defendants or the elements of a conspiracy claim under section 1985(3). Nor does the complaint reference section 1985(3). In sum, the First Amended Complaint does not assert a viable conspiracy claim under section 1985(3). To the extent that Wilder seeks to amend his complaint and add a new conspiracy claim, the Court denies leave to amend on the grounds that an amendment would be futile under *Hilliard v. Ferguson*.[77] The LCG/Morgan Motion to Dismiss is GRANTED with respect to a conspiracy claim under section 1985(3).

### D. State Law Claims.

The motion to dismiss does not expressly address the state law claims asserted against defendant Morgan, LCG, and the other defendants. Specifically, in paragraphs 49-50 of the First Amended Complaint, Wilder asserts state law claims for assault, battery, intentional and negligent infliction of emotional distress, negligent hiring, negligent supervision, abuse of process, and malfeasance in office against Morgan and LCG. Wilder argues in his Opposition that he has stated viable state law claims against Morgan and LCG.[78] In their reply brief, Morgan and LCG argue

---

entity which cannot conspire with itself"), aff'd, 562 F.2d 1015 (5th Cir. 1977), cert. denied, 439 U.S. 839, 99 S.Ct. 127, 58 L.Ed. 2d 137 (1978).

[77] 30 F.3d 649.

[78] ECF No. 20 at 21.

that the state law claims against Morgan are not viable under state law. The Court will not address new grounds for dismissal raised for the first time in a reply brief. Accordingly, to the extent that Morgan and LCG move to dismiss Wilder's state law claims, the motion is DENIED.

## IV.
### CONCLUSION

For the reasons set forth above, the LPD Motion to Dismiss [ECF No. 17] is GRANTED. Plaintiff's claims against LPD are DISMISSED WITH PREJUDICE.

The LCG/Morgan Motion to Dismiss [ECF No. 18] is GRANTED IN PART and DENIED IN PART. The court GRANTS the motion to dismiss with respect to Wilder's claims against defendant Morgan in his official capacity. These claims are DISMISSED WITH PREJUDICE. The court further GRANTS the Motion to Dismiss with respect to Wilder's conspiracy claim under section 1985(3). This claim is DISMISSED WITH PREJUDICE. The court DENIES the Motion to Dismiss with respect to Wilder's *Monell* claims against LCG, but orders Wilder to file an amended complaint that addresses the deficiencies in his *Monell* allegations identified in this ruling. Wilder must file his amended complaint within twenty (20) days of the Court's ruling on the newly filed motion to dismiss, ECF No.  28. In all other respects, the LCG/Morgan motion to dismiss is denied. To the extent that Morgan and LCG move for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure, that motion is DENIED.

THUS DONE in Chambers on this 18th day of March, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE