## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**KEVIN WILDER**                    **CASE NO. 6:20-CV-01383**

**VERSUS**                         **JUDGE SUMMERHAYS**

**SCOTT MORGAN ET AL**             **MAGISTRATE JUDGE CAROL B. WHITEHURST**

### REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6) filed on behalf of Former Interim Chief Scott Morgan, individually, Lafayette City-Parish Consolidated Government, Officer Dylan Smith, individually, Officer Trent Mouton, individually, Officer Katelyn Baudoin, individually, and Sergeant Ryan Shanahan, individually and in his official capacity as a sergeant for Lafayette City-Parish Consolidated Government. (Rec. Doc. 41). Plaintiff, Kevin Wilder, opposes the Motion (Rec. Doc. 48), and Former Interim Chief Scott Morgan, et al, have replied. (Rec. Doc. 49). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is RECOMMENDED that the Motion to Dismiss be GRANTED.

## Facts and Procedural History

Plaintiff filed the present action under 42 U.S.C. § 1983 on October 26, 2020, against Scott Morgan, individually and in his capacity as Chief of Police of the Lafayette Police Department, the Lafayette Police Department, Lafayette Consolidated Government ("LCG"), John Doe Nos. 1-4, "ABC Insurance Company," and "XYZ Insurance Company" following his arrest on October 24, 2019, asserting claims under the Fourth and Fourteenth Amendments to the United States Constitution. (Rec. Doc. 1).  Plaintiff also asserted state law claims for, *inter alia*, assault, battery, intentional misrepresentation, negligent and intentional infliction of emotional distress, abuse of process, and malfeasance in office with vicarious liability claims of the same nature against LCG and supervising officers, and requested compensatory, special, and punitive damages.  (*Id.*).

Per Plaintiff, on October 24, 2019, members of the Lafayette Police Department ("LPD") responded to a report of a single-vehicle accident where Plaintiff was allegedly under the influence of alcohol.  (Rec. Doc. 35, ¶ 4).  Plaintiff alleges he "was calmly sitting on the curb" when Officer Smith arrived who then "read [Plaintiff] his Miranda Rights and instructed him to walk to the front of the [LPD] unit some yards away.  (*Id.* at ¶ 5).  Plaintiff alleges he complied with this request but was unsure where to go and failed to stop directly in front of the vehicle. (*Id.* at ¶ 6).  Per Plaintiff, when he did not stop walking when he reached the front

2

of the LPD vehicle as instructed, "Officer Smith then forcefully gabbed [Plaintiff] by the arm and repositioned him with his back to the police unit and his body facing" Defendants Baudoin, Shanahan, and four "John Doe" defendants who witnessed Officer Smith's actions but did not intervene. (*Id.*). Plaintiff alleges that, at this time, his right arm "was resting on the police unit, and his left hand was by his side with his cell phone visible." (*Id.* at ¶ 7). Officer Smith then requested that Plaintiff give him the phone. (*Id.*). When Plaintiff did not comply, Officer Smith "attempted to grab [Plaintiff's] phone out of his left hand." (Rec. Doc. 35, ¶ 8). Plaintiff alleges that Officer Smith than "quickly and vigorously" grabbed him and tried to restrain him with handcuffs. (*Id.*). According to Plaintiff, Officer Smith clenched his right arm while Officer Mouton took hold of his left arm. (*Id.* at ¶ 9). Plaintiff alleges that Officer Mouton than "pushed [him] forward, then seemingly lept [*sic*] onto [Plaintiff's] back while Officer Smith drug him down by the arm." (*Id.*). Plaintiff alleges that Officers Mouton and Smith caused him to slam "headfirst into the concrete pavement, splitting the left side of his head and causing him to lay in a puddle of his own blood." (*Id.* at ¶ 10). Plaintiff further alleges that Officer Mouton then "knelt on [Plaintiff's] neck, obstructing his ability to breath[e]." (*Id.* at ¶ 11).

Plaintiff avers that Officer Smith attempted to cover-up his use of force. (Rec. Doc. 35, ¶ 13). Specifically, Plaintiff alleges that Officer Smith falsely told his supervisor, Officer Shanahan, and another LPD officer that Plaintiff failed to follow

instructions and walked away from him. (*Id*.).  Per Plaintiff, Officer Shanahan replied, "[g]ood start, pal. It is what it is'" and "[w]hat are you worried about it for?'" (*Id*. at ¶ 14).  Plaintiff states that Officer Mouton "conveyed a different tale to his fellow officers, telling them that [Plaintiff] 'kept pulling away' when they tried to confiscate his phone and that when they were going to handcuff him, he 'pulled away some more.'" (*Id*. at ¶ 16).  Per Plaintiff, Officer Smith told Officer Mouton that he would "'have Sarge do a use of force to cover both of our asses.'" (*Id*. at ¶ 15).  Plaintiff alleges that the body-cam footage does not support Officer Smith's or Officer Mouton's version of the interaction between Plaintiff and the officers, and that another officer told those around her that she walked away for a minute and then "'[t]hey decided to start tackling people and shit,'" to which Officer Mouton replied, "'[w]ell that guy was being an asshole.'" (*Id*. at ¶ 16-17).

On January 11, 2021, LCG and Former Interim Chief Scott Morgan filed a Motion to Dismiss. (Rec. Doc. 4).  On January 28, 2021, Plaintiff filed a Motion for Leave to File Amended Complaint which was granted on February 2, 2021. (Rec. Doc. 8 and 9).  On that same date, the originally named Defendants' Motion to Dismiss was denied subject to the right of Defendants to re-urge their motion if warranted once the Amended Complaint was filed.  (Rec. Doc. 9).

Plaintiff filed a First Amended Complaint on February 2, 2021, wherein he re-named Scott Morgan, individually and in his capacity as former Chief of Police

of the LPD, the LPD through LCG, LCG (correcting the name), John Doe Nos. 1-4, "ABC Insurance Company," and "XYZ Insurance Company" and added Ryan Shanahan, individually and in his capacity as a supervisory officer in the LPD through LCG, Officer D. Smith, Officer T. Mouton, and Officer K. Baudoin as new Defendants. (Rec. Doc. 10). Plaintiff re-alleged details regarding his October 24, 2019 arrest. (Rec. Doc. 10, ¶¶ 4-38). In response, the LPD filed a Motion to Dismiss (Rec. Doc. 17), the original Defendants re-urged their Motion to Dismiss (Rec. Doc. 18), and the newly added Defendants filed a Motion to Dismiss (Rec. Doc. 28) arguing that the First Amended Complaint failed to assert a viable *Monell* claim and that the claims against the added defendants were prescribed as a matter of law.

On March 18, 2022, the Court granted the LPD's Motion to Dismiss and the Motion to Dismiss as to the federal claims against Scott Morgan in his official capacity. (Rec. Doc. 32). The Court also dismissed Plaintiff's conspiracy claim under section 1985(3). (*Id*.). The Court, however, denied without prejudice the Motion to Dismiss for all other claims and ordered Plaintiff to file another amended complaint to address certain deficiencies in his *Monell* allegations. (*Id*.). On October 13, 2022, the Court denied without prejudice the Motion to Dismiss filed by the newly added Officer Defendants (Rec. Doc. 28) finding that until "[Plaintiff] files an amended complaint, the Court cannot determine the question of prescription under Louisiana law" and noted that the Officer Defendants may re-urge their

5

prescription arguments following the filing of an amended complaint. (Rec. Doc. 34).

On November 2, 2022, Plaintiff filed a Second Amended Complaint (Rec. Doc. 35), and, on August 10, 2023, Defendants collectively filed the Motion to Dismiss presently before the Court (Rec. Doc. 41).

## Law and Analysis

### I.     Law applicable to Rule 12(b)(6)

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007)(internal quotations omitted)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)(citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224

F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

7

"[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir.2009)(quoting *Bell Atlantic*, 127 U.S. at 556); See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir.2008). With these precepts in mind, the Court considers Plaintiff's Second Amended Complaint.

## II.     *Monell* Claims Asserted Against LCG

Defendant LCG challenges Plaintiff's *Monell* claims. (Rec. Doc. 41). LCG may not be held liable under Section 1983 on a theory of vicarious liability. *Hicks-Fields v. Harris Cty., Texas,* 860 F.3d 803, 808 (5th Cir. 2017). It may, however, be liable under *Monell v. Department of Social Services,* 436 U.S. 658 (1978) when the allegedly unconstitutional conduct at issue is directly attributable to the municipality through some sort of official action. To state a Section 1983 *Monell* claim, a plaintiff must allege facts demonstrating that (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force for the violation of a constitutional right. *Blanchard-Daigle v. Geers*, 802 F. App'x 113, 116 (5th Cir. 2020). Official policies may exist in the form of "written policy statements, ordinances, or

8

regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*.  To plead a *Monell* claim on the basis of a wide-spread practice, the plaintiff must plead facts showing "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).  Specifically, a plaintiff "must do more than describe the incident that gave rise to his injury." *Ratliffv. Aransas Cty., Texas*, 948 F.3d 281,285 (5th Cir. 2020). The facts pled must also show incidents similar to the conduct at issue in the instant case—that is, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Estate of Davis ex rei McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).  A plaintiff is required to plead more than a list of past actions alleged to be unconstitutional; a plaintiff must place these past occurrences in context to support the inference that the municipality knew about and accepted a wide-spread course of unconstitutional conduct.  *Peterson*, 588 F.3d at 851 n.4.

Here, Plaintiff alleges that LCG is responsible for the purported use of excessive force against him by its officers.  Plaintiff bases his *Monell* claim against LCG for (1) its "failure to train, supervise, and discipline" officers; (2) its "creations of or failure to correct unconstitutional policies practices, patterns, and/or customs"

9

as pleaded in paragraphs 28 through 36 of his Second Amended Complaint; and (3)

because it "encouraged, tolerated, ratified, and has been deliberately indifferent

to…policies, patterns, practices, and customs, and to the need for more or different

training, supervision investigation, or discipline" in the areas detailed in paragraph

83(a-n) of his Second Amended Complaint.  (Rec. Doc. 35, ¶¶ 81-83).

### a. Alleged pattern of excessive force

Plaintiff alleges that "between 2010 and 2019, there were 107 civil lawsuits

filed against LPD." (Id. at ¶ 27).  Plaintiff then identifies and summarizes 20 of these

lawsuits as involving allegations of excessive force from 2012 through 2021.  (Id. at

¶ 29).  Per Plaintiff:

> [A]lmost all of the [summarized] complaints of excessive use of force
> involve [LPD] officers grabbing the complainant, forcefully
> throwing/slamming the complainant face first into the ground without
> first attempting to de-escalate the situation, and kneeing on the
> complainant's neck area to effect the arrest of the complainant
> consequently resulting in injury to the complainant—all while the
> complainant was not resisting and was not posing any threat to the
> officers or public.

(Id. at ¶ 33).

In *Peterson*, the plaintiff identified 27 excessive force complaints against the

Fort Worth Police Department over approximately four years.  *Peterson*, 588 F.3d

at 851.  Although *Peterson* involved a case at the summary judgment stage, the Fifth

Circuit affirmed the district court decision holding that these prior occurrences did

10

not support a *Monell* claim, because the plaintiff "failed to provide context" to those 27 excessive force complaints sufficient to show that the complaints reflected municipal policy. *Id.*, 588 F.3d at 851–52. The Court found that "27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct." *Id*. at 852. Specifically, the Court noted that the record did not indicate the size of the Fort Worth Police Department or how many arrests were made by the department between the years cited. *Id*. at 851.

In this case, Plaintiff's allegations do not show a wide-spread practice or pattern that rises to the level of municipal policy. Plaintiff alleges that between 2010 and 2019, 107 lawsuits were filed against the LPD. However, the Complaint does not show that these lawsuits involved conduct similar to the conduct at issue in this case. With respect to the 20 instances of excessive force cases set forth in the Complaint, these cases were filed over a nine-year period—more than two times longer than the four-year period and 27 complaints that the *Peterson* court found insufficient to establish a municipal policy. Of the 20 cases, only seven involved allegations of being slammed to the ground which are the allegations here. Notably, of the 20 cases, over half were dismissed. Further, like *Peterson*, Plaintiff pleaded no statistical facts regarding the size of the police department or number of arrests

made by the department during the cited period which "may be relevant to determining whether a series of incidents can be called a pattern." *Id*.

Plaintiff also alleges that from 2010 through 2019, LPD officers submitted "1,172 use of force reports…equating to one approximately every three days." (Rec. Doc. 35 at ¶ 26). A use-of-force report standing alone does not equate to a constitutional violation absent facts showing the context for that use of force. Indeed, the nature of police work routinely entails some use of force. Plaintiff has pleaded no facts showing that this number of use-of-force reports is so unusual or extreme that it supports an inference of a persistent pattern of excessive force violations. Furthermore, Plaintiff does not place this statistic into context by showing the total number of arrests, nor does he offer comparisons to other, similarly situated municipalities. *But see Flanagan v. City of Dallas*, 48 F.Supp. 3d 941, 953 (N. D. Tex. 2014)(finding a complaint adequately pleaded an excessive force claim where the plaintiff pleaded a combination of statistics, past incidents, and statements by city officials).

Considering the foregoing, Plaintiff fails to properly plead a *Monell* claim against LCG for excessive force.

### b. Failure to train and supervise officers

Plaintiff alleges, in pertinent part, in Count II that his rights were violated by LCG's failure to train and supervise Defendants Smith, Mouton, and Baudoin. *(Rec.

Doc. 35, ¶ 81.).  The Supreme Court has observed that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick*, 563 U.S. 51, 61 (2011).  To state such a claim, a plaintiff must plead that: (1) the training procedures of the municipality's policymaker were inadequate; (2) the policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury.  *See Taylor v. Hartley*, 488 F. Supp. 3d 517, 535 (S.D. Tex. 2020)(citing *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000)).

"Municipal liability doesn't attach merely because 'a particular officer may be unsatisfactorily trained' or 'an otherwise sound program has occasionally been negligently administered.'"  *Taylor*, 488 F.Supp. 3d at 535 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989)).  For this Court, the focus must be on the *adequacy* of the training program in relation to the tasks the particular officer must perform.  *Taylor*, 488 F.Supp. 3d at 535 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).  Therefore, to defeat a motion to dismiss, the plaintiff must allege with specificity how the training program in effect is defective in this regard.  *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005).  Proof that the plaintiff's injury "could have been prevented if the officer had received better or additional training cannot, without more, support liability."  *Id.* at 293.

13

Furthermore, the failure to train must reflect a "deliberate" or "conscious" choice by the municipality. "Deliberate indifference" is "a stringent standard of fault," one "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Taylor*, 488 F.Supp. 3d at 536 (citing *Connick*, 563 U.S. at 61). City policymakers are only considered to be deliberately indifferent when they are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, and they choose to retain that program. *Connick*, 563 U.S. at 61. A municipality's deliberate indifference typically requires a plaintiff to allege a pattern of similar constitutional violations by untrained employees. *Id.* at 62. A plaintiff must generally show that, given the duties assigned to specific officers or employees, "the need for more or different training is obvious, and the inadequacy is likely to result in the violation of constitutional rights." *City of Canton*, 489 U.S. at 390. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. *Connick,* 563 U.S. at 62.

Here, Plaintiff alleges that "at the time of the subject incident, Defendants Morgan, Shanahan, LCG and the Lafayette Police Department did not have an adequately trained upon, promulgated, and enforced 'use of force' policy whereby Lafayette police officers…are properly taught and trained as to what constitutes the

use of 'reasonable force' under the circumstances." (Rec. Doc. 35, ¶ 70). Plaintiff further alleges that the LPD "did not have a written 'Require De-Escalation' policy as part of its 'use of force policy.'" (*Id.* at ¶ 39). Plaintiff then, however, details the de-escalation training the LPD does undergo, but makes repetitive, non-specific conclusory statements as to why said training is allegedly insufficient. (*Id.* at ¶¶ 39-47).

Plaintiff does not allege specific facts about the actual training protocols of the LPD, nor does he describe any deficiencies in the LPD's program in light of the assigned duties of Defendants Smith, Mouton, and Baudoin. *See Taylor*, 488 F.Supp.3d at 536 (where the plaintiff failed to identify specific training protocols and how they were inadequate, he failed to sufficiently plead a claim for failure to train); *see also Snyder v. Trepagnie*r, 142 F.3d 791, 798 (5th Cir. 1998). Plaintiff's reliance on the lawsuits filed against LCG and LPD does not demonstrate this pattern because, as explained above, Plaintiff's allegations do not show that these lawsuits were grounded on conduct similar to the conduct at issue in the present case. Moreover, the 20 use-of-force cases cited by Plaintiff do not support his failure-to-train claim for the same reason that they do not support a claim based on a pervasive pattern of misconduct that rises to the level of municipal policy. Specifically, Plaintiff does not plead facts showing that these 20 complaints over a nine-year period reflect a persistent pattern of misconduct versus isolated incidents.

Considering the foregoing, Plaintiff has not sufficiently pled that the training procedures of the LPD were inadequate.  Furthermore, because of these deficiencies in Plaintiff's pleading, Plaintiff also has not shown the *causation* required by the third element.  Thus, Plaintiff does not adequately plead a *Monell* claim for failure to train against LCG.

### c. Failure to discipline

In *Hunter v, City of Houston*, 564 F. Supp. 3d 517 (S.D. Tex. 2021), the district court noted that "[f]ailure to discipline isn't a common claim, with the Fifth Circuit appearing to have addressed it only eight times in the last twenty years."  The essential elements of a failure to discipline claim are (1) municipality failed to discipline its employees; (2) that failure to discipline amounted to deliberate indifference; and (3) the failure to discipline directly caused the constitutional violations in question.  *Hunter*, 564 F. Supp. 3d at 529.

Here, Plaintiff's claim of failure to discipline must be dismissed as entirely conclusory.  Plaintiff alleges in his Complaint that LCG has "encouraged, tolerated, ratified, and has been deliberately indifferent to…policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline" in the areas detailed in paragraph 83 (a-n) of his Complaint.  (Rec. Doc. 35, ¶ 83).  Plaintiff further alleges that "the LPD has a history of not properly disciplining or firing officers when they engage in illegal or improper conduct,

including excessive use of force and improper deadly use of force." (*Id*. at ¶ 37). Despite alleging that the LPD has a "history" of not disciplining officers, Plaintiff fails to allege any similar incidents wherein officers were not disciplined.

There is also no allegation of deliberate indifference. To establish deliberate indifference, a plaintiff must produce "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick,* 563 U.S. at 61 (quoting *Board of County Commissioners of Bryan County Oklahoma v. Brown*, 520 U.S. 397, 409–10 (1997)). That "ordinarily" requires a plaintiff to allege a pattern of similar constitutional violations. *Id*. at 62. Here, Plaintiff has not alleged other instances where officers weren't disciplined in response to clear constitutional violations, and nothing shows that "city policymakers are on actual or constructive notice" of such a deficiency. *Id*. at 61.

Consequently, Plaintiff does not adequately plead a *Monell* claim for failure to discipline against LCG and Counts II and III should be dismissed as to LCG[1].

### III.    Whether Plaintiffs have stated a §1983 claim against Defendants Morgan[2] and Shanahan in their Official Capacities

"'[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real

---

[1] Plaintiff pleads these same counts against LPD who was already dismissed from this action. (Rec. Doc. 31).
[2] While Plaintiff pleads against Defendant Morgan in his official capacity at Counts II and III, the Court already dismissed the federal claims against Defendant Morgan in his official capacity. (Rec. Doc. 32).

party in interest is the entity.'" *Givs v. City of Eunice,* No. 6:05–CV–0788, 2006 WL 1831528, at *1 (W.D.La. June 29, 2006) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).  "A judgment in a § 1983 lawsuit against an official in his official capacity imposes liability against the entity he represents." *Deshotels v. Village of Pine Prairie,* No. 11–CV–2052, 2012 WL 1712358, at *4 (W.D.La. Apr. 13, 2012). Therefore, it is "well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability." *Howell v. Town of Ball,* No. 12–951, 2012 WL 3962387, at *4 (W.D.La. Sept. 4, 2012), citing *Monell, supra.* When, as in this case, the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them. *Castro Romero v. Becken,* 256 F.3d 349, 355 (5th Cir.2001); *Flores v. Cameron County, Tex.,* 92 F.3d 258, 261 (5th Cir.1996). Thus, the Court finds that Plaintiffs' claims against Defendant Shanahan in his official capacity are redundant of claims asserted against LCG and Counts II and III should therefore be dismissed.

### IV.    Whether Plaintiff's §1983 and Bystander claims against Defendants Smith, Mouton, Baudoin, and Shanahan are prescribed

Defendants Smith, Mouton, Baudoin, and Shanahan argue that the Section 1983 and Bystander claims asserted against them are barred by prescription contending that they were added as defendants after the claims against them had

prescribed.  (Rec. Doc. 41).  The original complaint filed in the case named four "Doe" officer defendants.  Plaintiff then filed an Amended Complaint naming the four Defendant Officers at issue. The limitations period for a Section 1983 action is determined by the relevant state law limitations period for personal injury actions. *Whitt v. Stephens Cnty.*, 529 F.3d. 278, 282 (5th Cir. 2008).  There is a one-year prescription period for delictual actions under Louisiana law. *Elzy v. Roberson*, 868 F.2d. 793, 794 (5th Cir. 1989)(citing La. Civ. Code Art. 3492).  Accordingly, the claims against Defendant Officers had prescribed at the time they were named as defendants in the Amended Complaint unless those claims "relate back" to the filing of the original complaint under FRCP 15(c).

F.R.C.P. Rule 15(c)(1), states:

An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i)     received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii)     knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

It is indisputable that the Second Amended Complaint asserts claims arising out of the same incident (Plaintiff's arrest). "Rule 15(c) cannot be read to mean that any untimely cross-claim or pleading automatically relates back to the original complaint or answer merely because the later pleading arises from the same conduct, transactions and occurrences; otherwise, all cross-claims would be exempted from any time limitations because such claims must arise out of the same conduct, transactions, and occurrences in order to be asserted as cross-claims." *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1368, fn. 6 (5th Cir.1994). "Rather, there must be indication that the opposing party has been put on notice." *Id*., citing 6A Charles A. Wright, et al., Federal Practice and Procedure § 1496 (1990) ("[T]he standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test; although not expressly mentioned in the rule, the courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised in the amended pleading.").

However, because state law supplies the limitations period governing Section 1983 claims, state law also governs the interruption of that limitations period. *Miller v. Mancuso*, 388 F.App'x. 389, 391 (5th Cir. 2010). Pursuant to Louisiana law, the interruption of prescription as to one solidary obligor is effective against all solidary

20

obligors. La. Civ. Code Art. 2324(c). However, "where no liability is found on a part of a timely sued alleged tortfeasor, then prescription is not interrupted as to untimely sued tortfeasors, as no joint or solidary obligation exist." *Miller*, 388 F.App'x. at 391. The Court summarized the pertinent facts and relevant law in its October 13, 2022 ruling on the prior Motion to Dismiss (Rec. Doc. 28) finding that LCG was "the only remaining defendant to serve as an 'anchor' defendant for purposes of interrupting the prescription period under article 2324(c)." (Rec. Doc. 34, p. 2). As discussed above, the Court has now dismissed the "anchor" defendant, LCG. Accordingly, the claims against the untimely named Defendant Officers cannot relate back under Louisiana law.

### a. Whether Rule 15(c)(1)(C) would allow relation back

Since Plaintiffs' Second Amended Complaint cannot relate back or otherwise survive prescription under Louisiana law, Plaintiffs' claims can only survive if Rule 15(c)(1)(C) applies. Relation back in this context applies if all four of the following factors are met:

(1) the basic claim must have arisen out of the conduct set forth in the original pleading;
(2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense;
(3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it, and

(4) the added party had notice within now 90 days following the filing of the complaint, or longer if good cause is shown.[3]

*Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir.1998)(citing *Skoczylas v. Federal Bureau of Prisons,* 961 F.2d 543, 545 (5th Cir.1992), and noting the effect of the 1991 amendment to Rule 15(c) in response to the factors enumerated by *Schiavone v. Fortune,* 477 U.S. 21, 29 (1986)).

Rule 15, as amended, "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." *Id.* (quoting *Barrow v. Wethersfield Police Dept.,* 66 F.3d 466, 469 (2d Cir.1995), *modified by* 74 F.3d 1366 (2d Cir.1996)). The necessary elements for relation back under Rule 15(c)(1) are "notice" and "mistake." *Id.*

Notice can be inferred when there is an identity of interest between the original defendant and the newly named defendant, explained by the Fifth Circuit as follows:

> Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." In this regard, notice may be imputed to the new party through shared counsel.

*Id.*, citing *Kirk v. Cronvich,* 629 F.2d 404, 407–08 (5th Cir.1980); *Barkins v. International Inns, Inc.,* 825 F.2d 905, 907 (5th Cir.1987); *Hendrix v. Memorial Hosp. of Galveston County,* 776 F.2d 1255, 1257–58 (5th Cir.1985).

---

[3]     The court in *Jacobsen* relied on the service rules under Rule 4(m) before it was amended in 2015 to change the period for service from 120 days to 90 days.

The question of "mistake" under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the defendant] as the proper defendant, but whether [the defendant] knew or should have known that it would have been named as a defendant but for an error. *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 548 (2010). "Failure to identify individual defendants cannot be characterized as a mistake." *Jacobsen*, 133 F.3d at 320 (citing *Barrow*, 66 F.3d at 469).

The Amended Complaint did not change the name of Officer Defendants or replace them as previously named defendants. Officer Defendants are entirely new defendants, sued in addition to original defendants, LCG and Officer Morgan. In other words, the element of "mistake" is lacking, such that Rule 15(c)(1)(C) is not applicable. Accordingly, the Court finds that Plaintiff's claims would not relate back under Rule 15(c)(1)(C) and must be dismissed.

## V.   Whether Plaintiff's state law claims against Defendants Smith, Mouton, and Baudoin are prescribed

Plaintiff's state law claims against Defendants Smith, Mouton, and Baudoin for assault, battery, intentional misrepresentation, negligent and intentional infliction of emotional distress, abuse of process, and malfeasance in office are claims sounding in tort, which are subject to Louisiana's one-year prescriptive period applicable to delictual actions. *Elzy*, 868 F.2d. at 794 (citing La. Civ. Code Art.

3492). Defendant Officers contend that they were added as defendants after the claims against them had prescribed under Louisiana law.

For the same reasons Plaintiff's federal claims against Defendant Officers are time-barred, as discussed above, Plaintiff's state law claims are likewise prescribed and must be dismissed.

## VI.    Fictitious Defendants John Doe # 1-4 and ABC and XYZ Insurance Companies

Plaintiff also brings suit against four John Does and ABC and XYZ Insurance Companies.  (Rec. Doc. 35).  Neither the Federal Rules of Civil Procedure nor 42 U.S.C. § 1983 provides authority for joining fictitious defendants in this suit. *King v. Forest*, 2008 WL 4951049, at *4 (N.D. Tex. Nov. 14, 2008)(citing *Taylor v. Federal Home Loan Bank Bd*., 661 F.Supp. 1341, 1350 (N.D.Tex.1986)). Consequently, the claims against such defendants are subject to dismissal.

The Court may raise the question of personal jurisdiction *sua sponte. Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir.2001) (approving *sua sponte* dismissal of action instead of entry of default judgment); *Frass v. S. Pac. Transp. Co.*, 810 F.Supp. 189, 190 (S.D.Miss.1993)(raising question of personal jurisdiction *sua sponte*). When a district court raises the issue of personal jurisdiction *sua sponte*, however, it should provide a reasonable opportunity for the plaintiff to answer the court's jurisdictional concerns.  *King*, 2008 WL 4951049, at

*4.  Addressing the claims in this Report and Recommendation provides Plaintiff with sufficient notice of, and opportunity to respond to, the possible dismissal of these claims before the district judge acts. See *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir.1998).  Accordingly, the Court recommends that all claims against John Does # 1-4 and ABC and XYZ Insurance Companies be dismissed.

### VII.  Whether Plaintiffs' state law claims against Defendants Morgan in his Official Capacity, Shanahan in his Official Capacity, and LCG should be dismissed

The motion to dismiss does not expressly address the state law claims asserted against Defendants Morgan and Shanahan in their Official Capacity and LCG. Specifically, in paragraphs 88 through 89 of the Second Amended Complaint, Plaintiff asserts state law claims for assault, battery, international misrepresentation, intentional and negligent infliction of emotional distress, negligent hiring, negligent retention, negligent supervision, abuse of process, and malfeasance in office.  (Rec. Doc. 35).  Plaintiff argues in his Opposition that he has stated viable state law claims against all Defendants.   (Rec. Doc. 48, p. 24).   Defendants only raise their prescription argument as to the state law claims against the individually named Defendant Officers but fail to raise a defense or argue for dismissal of the state law claims against Defendants Morgan and Shanahan in their Official Capacity and LCG.

Despite this, when, as is being recommended here, all federal question claims have been dismissed, the Court may decline to exercise supplemental jurisdiction over the remaining state claims. *See* 28 U.S.C. § 1367(c)(3).  Pursuant to 28 U.S.C. § 1367, a federal district court may exercise supplemental jurisdiction over state-law claims that the court would not otherwise have subject matter jurisdiction to hear if the claims are part of the same case or controversy as the claims over which the court has original jurisdiction.  Having now dismissed all claims over which the Court has original jurisdiction, the remaining state law claims should also be dismissed.  *See* 28 U.S.C. § 1367(c)(3).

## Conclusion

For the reasons discussed herein, it is recommended that the Motion to Dismiss filed on behalf of Former Interim Chief Scott Morgan, individually, Lafayette City-Parish Consolidated Government, Officer Dylan Smith, individually, Officer Trent Mouton, Individually, Officer Katelyn Baudoin, individually, and Sergeant Ryan Shanahan, individually and in his official capacity as a sergeant for Lafayette City-Parish Consolidated Government. (Rec. Doc. 41) be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

26

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 8th day of December, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE